```
 1 | Robert A. Sacks (SBN 150146)
   | Brian R. England (SBN 211335)
 2 | Edward E. Johnson (SBN 241065)
   | SULLIVAN & CROMWELL LLP
 3 | 1888 Century Park East, Suite 2100
   | Los Angeles, California 90067-1725
 4 | Tel.:  (310) 712-6600
   | Fax:   (310) 712-8800
 5 |
   | Attorneys for Third Party Defendant
 6 | j2 GLOBAL COMMUNICATIONS. INC.
   |
 7 | Douglas O'Keefe (admitted pro hac vice)
   | John C. Carey (admitted pro hac vice)
 8 | CAREY, RODRIGUEZ,
   | GREENBERG & PAUL LLP
 9 | 1395 Brickell Avenue, Suite 700
   | Miami, Florida 33131
10 | (305) 372-7474
   | (305) 372-7475 facsimile
11 |
   | Attorneys for Defendant and
12 | Counterclaimant VENALI, INC.
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATCH CURVE, INC., | Case No. CV 05-4820 DDP (AJWx) |
| Plaintiff | **JOINT STIPULATION CONCERNING THIRD PARTY DEFENDANT j2 GLOBAL COMMUNICATIONS, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER FED. R. CIV. P. 30(g)** |
| v. | |
| VENALI, INC. | |
| Defendant. | **DISCOVERY MATTER** |
| | [Cent. Dist. Civ. L. R. 37-2] |
| | Discovery Cutoff Date:  2/28/08 |
| AND RELATED CROSS-ACTION AND THIRD PARTY COMPLAINT | Pretrial Conference Date: 6/2/08 |
| | Trial Date: 6/10/08 |
| | Judge:      Hon. Andrew J. Wistrich |
| | Courtroom: 690 |
| | Hearing:    January 7, 2008 |
| | Time:       10:00 a.m. |

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1
    Third Party Defendant j2's Introduction: ...................................................... 1
    Defendant Venali's Introduction: ................................................................... 3
Points and Authorities ........................................................................................... 5
    j2's Contentions: ............................................................................................ 5
    Venali's Contentions: .................................................................................... 8

Pursuant to Central District Civ. L. R. 37-2, Third Party Defendant j2 Global Communications, Inc. ("j2") and Defendant Venali, Inc. ("Venali") hereby jointly submit this Stipulation concerning j2's Motion for Attorneys' Fees and Costs under Fed. R. Civ. P. 30(g).

## INTRODUCTION

### Third Party Defendant j2's Introduction:

This motion seeks the costs and attorneys' fees incurred by j2 to attend the deposition of John Ragland, in both his individual capacity and as the corporate representative of non-party Affinity Partners LLC ("Affinity") and to preclude Venali from utilizing the deposition, which was taken in violation of the Federal Rules, for any purpose.[1] The deposition was noticed by Venali for New Haven, Connecticut, requiring counsel for j2, Brian R. England, to fly cross-country to attend.[2] (Declaration of Brian R. England ("England Decl.") ¶¶ 2-3.) Only upon arriving at the deposition did counsel for j2 learn that Venali did not plan to attend the deposition but rather, in direct violation of Federal Rule of Civil Procedure 30(b)(7), to take the deposition by telephone.

The connection of Mr. Ragland and Affinity to this action is, at best, tenuous,[3] and the deposition lasted approximately one hour. (*Id.* ¶ 3.) Counsel for j2 then flew back across the country to California, where he resides and this action

---

[1] If granted, j2 will submit a declaration detailing its costs and fees.

[2] At j2's expense, Mr. England and Sullivan & Cromwell LLP also represented Affinity and Mr. Ragland for purposes of responding to the subpoena and during the deposition, because the deposition concerned work Affinity performed on behalf of j2 several years ago.

[3] During its brief engagement for j2, Affinity sent a handful of emails to sales targets of j2. Venali apparently contends that one of those emails contained a misstatement about the number of litigations Venali was involved in at the time. In addition to being immaterial, that contention is irrelevant. At the recent deposition of Venali under Fed. R. Civ. P. 30(b)(6), Venali's corporate representative (who is also Venali's lawyer in this case, Mr. O'Keefe) testified that Venali is not relying on any communications between j2 and Venali's customers to support its remaining counterclaims. (England Decl. Exh. F (O'Keefe Dep.) at 127:23 – 128:25.)

is pending. (*Id.*) In all, the trip took two full days, at a cost substantially more than $10,000 in expenses and attorneys' fees, for one unnecessary, hour-long deposition. (*Id.*)

Venali, however, incurred *no* costs in traveling to the deposition, because its counsel, Douglas O'Keefe, took the deposition by phone. (*Id.* ¶ 4.) Although Fed. R. Civ. P. 30(b)(7) expressly requires a written stipulation or court order to take a deposition telephonically, Mr. O'Keefe never asked j2 to stipulate to a telephonic deposition. (*Id.*) In fact, in multiple telephonic discussions between Mr. England and Mr. O'Keefe scheduling and coordinating the deposition, Mr. O'Keefe never once disclosed that he would take the deposition by telephone, even when Mr. England repeatedly stressed to him the significant fees and costs both parties would incur in traveling to Connecticut for an unnecessary deposition, giving him multiple opportunities to raise this issue. (*Id.* ¶¶ 5-6.) As late as the week before the deposition, Mr. England tried to persuade Mr. O'Keefe to call off the deposition to avoid the unnecessary cost and inconvenience of traveling to Connecticut; when Mr. O'Keefe insisted on going forward, Mr. England said he would "see [him] in Connecticut." (*Id.* ¶ 5.) Nevertheless, the first time Mr. England learned that Mr. O'Keefe planned to take the deposition by telephone was when he arrived at the deposition location and found a speakerphone in place of Mr. O'Keefe. (*Id.* ¶ 6.)

Venali concedes that its conduct violated the applicable Federal Rules. During the parties' meet and confer and subsequent correspondence, Mr. O'Keefe acknowledged that Venali "technically" failed to give notice or to comply with Rule 30(b)(7). (*Id.*, Exh. A.)

Had j2 known that Mr. O'Keefe planned to take the deposition telephonically, Mr. England would not have spent two days traveling to and from New Haven, and j2 may have stipulated to a telephonic deposition. (*Id.* ¶ 7.) Instead, because Venali failed to seek consent (from either the Court or j2) to a

1  telephonic deposition, as the Federal Rules require, or give any notice whatsoever,
2  j2 unnecessarily incurred substantial costs and attorneys' fees.
3        Under the Federal Rules, Venali, not j2, must bear the cost of Venali's
4  improper conduct. Fed. R. Civ. P. 30(g) provides that a court may award costs,
5  including reasonable attorneys' fees, if "the party giving notice of the deposition
6  fails to attend and proceed therewith and another party attends in person or by
7  attorney pursuant to the notice." Calling in by telephone, without a stipulation or
8  court order providing for a telephonic deposition, does not constitute "attend[ing]"
9  a deposition. See Frazier v. Layne Christensen Co., 486 F. Supp. 2d 831, 846
10 (W.D. Wis. 2006). Accordingly, j2 is entitled to recover the costs and fees it
11 incurred in attending Mr. Ragland's deposition. Venali should also be precluded
12 from using the deposition, taken improperly by telephone without leave, for any
13 purpose.
14 **Defendant Venali's Introduction:**
15       The subject matter of j2's motion is not a proper basis for imposing
16 sanctions on Defendant Venali, Inc. ("Venali") or its counsel. There is no case in
17 history where a federal court awarded fees to a party because the opposing party
18 took a deposition telephonically. j2 asks this Court to be the first ever to impose
19 such a sanction.
20       The deposition testimony obtained from Mr. Ragland was important
21 as Mr. Ragland previously failed to produce documents that had been subpoenaed
22 concerning his attempts to use the sham litigation to discourage at least one of
23 Venali's customers from doing business with Venali. Indeed, Mr. Ragland
24 testified that he had destroyed these relevant documents. The significance of this
25 testimony is best evidenced by j2's motion to exclude it. Venali's counsel, Mr.
26 O'Keefe, scheduled the Ragland deposition in good faith. And, Mr. O'Keefe had
27 every intention of attending the Ragland deposition in person.
28

As the Court is already aware, the deposition went forward as scheduled. Counsel for j2 met with their client and prepared him for the deposition, which lasted approximately one hour as Mr. O'Keefe had estimated to counsel for j2. The only issue is that Mr. O'Keefe appeared by telephone. While Mr. O'Keefe intended to attend the deposition in person, an obligation to his family prevented him from flying to Connecticut and attending in person. O'Keefe Decl., ¶ 4. Mr. O'Keefe had two choices – postpone the deposition yet again or attend the deposition telephonically. Mr. O'Keefe chose the latter. *Id.* at ¶ 5.

The fact that Mr. O'Keefe attended the deposition by telephone is simply not a basis for imposing sanctions on Venali or Mr. O'Keefe. There is absolutely no evidence that Mr. O'Keefe acted in bad faith. Parties routinely agree that certain depositions can be taken telephonically. Indeed, j2 has agreed to such requests in this case.

j2 was obviously not prejudiced by attending the deposition. The telephonic appearance created no additional expense to j2. Notwithstanding j2's self-serving statement to the contrary, the parties' course of dealing makes clear that j2's counsel would have attended in person regardless of whether Mr. O'Keefe planned to appear in person. Indeed, j2 and its counsel have repeatedly indicated in this case that they will attend depositions in person regardless of whether Venali takes the deposition telephonically. This has been true for depositions as far away as Portland, Oregon and Seattle, Washington.

During a meet and confer on this matter, Mr. England stated that he could not say that he would not have traveled to Connecticut to meet with his client, prepare him for the deposition and attend the deposition in person if he had known that Venali would appear telephonically. O'Keefe Decl., ¶ 9. It is only now, that Mr. England argues, in opportunistic fashion, that his decision to attend in person might have different. The Court should reject this hindsight. Imposing sanctions under these facts would serve only as a windfall to j2 in a case that never

should have been filed. Moreover, this is not a situation where j2 needlessly traveled to a deposition that did not take place.

## POINTS AND AUTHORITIES

**j2's Contentions:**

Federal Rule of Civil Procedure 30(b)(7) requires either a written stipulation between the parties or a court order authorizing a telephonic deposition:

> The parties may stipulate in writing or the court may upon motion order that a deposition be taken by telephone or other remote electronic means.

Venali neither obtained, nor even requested, a stipulation regarding Mr. Ragland's deposition from j2 or Plaintiff Catch Curve, Inc. (England Decl. ¶ 4.) Nor did Venali file a motion with this Court seeking permission to take the deposition telephonically. Thus, it is indisputable that Venali violated Fed. R. Civ. P. 30(b)(7), and Venali has acknowledged that it did so.[4]

Venali provided no notice of any kind that the deposition would be taken telephonically. Venali originally served a subpoena on Mr. Ragland on June 29, 2007, and sent four separate Deposition Notices in the course of scheduling the deposition.[5] Neither the subpoena nor the several notices indicated in any way that Venali intended to take the deposition telephonically. (England Decl., Exh. B-E.) But more troubling, Mr. England spoke with Mr. O'Keefe about the deposition multiple times, and while Mr. England repeatedly emphasized that the deposition was not important enough to merit the costs that both parties would incur in flying

---

[4] As noted above, Venali does not, and cannot, dispute that it failed to comply with Rule 30(b)(7).

[5] Venali originally noticed the deposition of Mr. Ragland. It subsequently served an amended notice of deposition on Mr. Ragland along with an amended notice of deposition to Affinity (although Venali neither served a proper deposition subpoena on Affinity nor stated the matters concerning which Affinity's testimony was requested under Fed. R. Civ. P. 30(b)(6)). Finally, Venali served a second amended notice on Affinity. The four Notices of Deposition are attached to the Declaration of Brian R. England as Exhibits B to E.

-5-

to Connecticut, Mr. O'Keefe never stated or even suggested that he would not be taking the deposition in person, and therefore that Venali would not be incurring any of the significant costs associated with travel. (*Id.* ¶¶ 5-6.)

Fed. R. Civ. P. 30(g) authorizes a party to recover its attorneys' fees and costs incurred in attending a deposition under these circumstances. As explained by the Court in *Frazier*, 486 F. Supp. 2d at 846 (quoting the rule):

> Rule 30(g)(1) permits a court to award costs if "the party giving notice of the deposition fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice."

*Frazier* is directly on point and establishes j2's entitlement to recover attorneys' fees and costs here. There, the plaintiffs noticed an out-of-state, third-party deposition for January 5th. *See id.* The defendants' counsel traveled to the deposition location, but the plaintiffs' counsel (like Venali) decided to take the deposition telephonically without notice, a written stipulation between the parties, or a court order. *See id.* On the morning of the deposition, however, the deponent did not appear. *See id.* The plaintiffs' counsel notified the defendant that the deposition would not go forward that day, and in fact took the deposition telephonically a short time later. *See id.*

In granting the defendant's motion for costs and fees for the aborted deposition, the District Court squarely held that appearing telephonically, without a stipulation or court order, does not constitute attending a deposition under Fed. R. Civ. P. 30(g). *See id.* at 847. Accordingly, the Court ordered the plaintiffs to reimburse the defendants for the costs and attorneys' fees incurred in traveling to California for the deposition. *See id.*

It appears, based on correspondence with Venali's counsel and the parties' meet and confer discussion, that Venali intends to argue that *Frazier* is distinguishable because there, the deposition did not go forward, whereas here, although Mr. England objected when he discovered that Mr. O'Keefe was not in

-6-

attendance, the deposition did go forward. In essence, Venali's argument is that j2 should not be awarded the attorneys' fees and costs incurred in attending the deposition because it was not injured: j2 would have incurred the same costs had Mr. O'Keefe attended the deposition as required by the Federal Rules and as noticed by Venali.

The *Frazier* court, however, considered and rejected a closely analogous argument that sanctions were not warranted because the violation of Rule 30(g) did not injure the moving party. Plaintiffs' counsel in that case, who failed to attend the deposition, argued that because the third party deponent did not appear (for reasons unrelated to plaintiffs' counsel), the deposition would not have gone forward even if he had attended, and therefore his violation did not cause any injury—opposing counsel's trip was wasted whether he attended or not. *See Frazier*, 486 F. Supp. 2d at 847. The court rejected any such injury or causation requirement in Rule 30(g):

> Plaintiff's arguments are off the mark; defendants' conduct during discovery has been addressed and <u>the fact that Moore [the deponent] failed to attend does not absolve them</u>. The fact remains that defendants' attorney traveled to California for a deposition plaintiffs scheduled. <u>He relied on the notice sent by plaintiffs. Plaintiffs failed to attend the deposition in person and did not arrange with defendants or the court to appear by telephone</u>. Accordingly, I find that plaintiffs violated Rule 30(g)(1).

*Id.* (emphasis added).

Moreover, in this case j2 *was* injured by Venali's misconduct. Had he known that Venali intended to conduct the deposition telephonically, counsel for j2 would not have traveled to New Haven. (England Decl. ¶ 7.) j2 may have stipulated to a telephonic deposition, given the insignificance of the deposition and the disproportionately large costs required to attend in person, and itself participated by phone. Alternatively, j2 might have objected and required Venali

to seek Court permission to proceed with the deposition telephonically. Under the circumstances at issue here, however, those were not options because j2 understood, based on Venali's representations, that Mr. Ragland was going to be questioned in person by Venali's counsel.

Indeed, without speculating about Venali's motivation, it is apparent that by refusing to issue sanctions, this Court would be condoning potentially vexatious discovery conduct: any party wishing to inflict thousands of dollars in needless costs on its opponent could notice a deposition in an inconvenient location, and then appear telephonically without notice, causing opposing counsel to incur unreciprocated costs and fees traveling. This is precisely the type of conduct that Rule 30(g) was intended to prohibit and that would be deterred with an award of costs and fees here.[6]

Additionally, because the deposition was taken in violation of the Federal Rules, the Court should preclude Venali from utilizing it for any purpose. A party should not be rewarded for obtaining evidence in violation of the discovery rules.

**Venali's Contentions:**

The Court should not sanction Venali or its counsel merely because Mr. O'Keefe attended the Ragland deposition by telephone. j2 argues that Venali should be sanctioned because Mr. O'Keefe "failed to attend" a noticed deposition. However, nothing could be further from the truth. The facts are clear that the deposition actually went forward and lasted as long as Mr. O'Keefe stated it would. The only issue is that Mr. O'Keefe was on the telephone rather than across a table from j2's counsel. This resulted in no prejudice or harm to j2, whose counsel represented Mr. Ragland, traveled to Connecticut to meet with Mr.

---

[6] j2 also requests that the Court award it the costs and fees incurred in bringing this motion. See Fed. R. Civ. P. 37(a)(4).

-8-

Ragland, prepared Mr. Ragland for his deposition, and defended the deposition. Accordingly, this is not a situation where counsel for one of the parties needlessly traveled to a remote location for a deposition that did not go forward. Accordingly, the Court should not impose sanctions on Venali or its counsel.

It is within the Court's discretion to impose sanctions. Indeed, the Court "has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996). Rule 30(g)(1) of the Federal Rules of Civil Procedure expressly provides that the Court <u>may</u> impose sanctions where a party fails to appear for a noticed deposition. This makes clear that there are some situations where sanctions are appropriate and others where sanctions are not justified.

Courts have ordinarily reserved sanction for those cases where the offending party's violation was serious and unjustified. *See Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 (N.D. Ill. 2001). Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against imposing sanctions. *Id.* In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports an imposition of sanctions. *Id.* In the end, the determination of waiver must be made on a case-by-case basis. *Id.*

The situation here does not even approach "abusive" discovery tactics. *See Logan v. West Coast Benson Hotel*, 981 F. Supp. 1301, 1308 (D. Or. 1997) (condemning inappropriate behavior during the discovery process including impermissibly coaching a witness, intentionally disrupting a deposition, hiding information and other improper conduct, but finding that such conduct was not so abusive as to warrant sanctions). j2 suggests that sanctions are mandatory regardless of the circumstances. However, this is not a matter where Venali has taken a cavalier attitude toward discovery. Venali has consistently worked with opposing counsel to schedule deposition dates that are mutually agreeable.

Instead, this is a case where Venali was acting in good faith but was forced by the circumstances to appear telephonically for a single deposition.

j2 opportunistically attempts to turn this technical violation into a windfall award of attorneys' fees. More importantly, j2 seeks to impose a severe sanction and exclude the evidence entirely merely because Venali's counsel questioned the witness by telephone. This relief is entirely inappropriate because j2 suffered no prejudice by Venali taking the deposition telephonically. In fact, during the parties' meet and confer on this issue, when asked Mr. England would not confirm the same position that he now takes in his declaration – namely, that he would not have flown to Connecticut had he known that the deposition would be taken telephonically. *See* O'Keefe Decl., ¶ 9. In light of this fact, the imposition of sanctions of any sort upon Venali is "clearly inappropriate, and an order imposing the harsh penalty of exclusion of evidence would almost certainly be an abuse of discretion." *Network Appliance, Inc. v. Bluearc Corp.*, 2005 WL 1513099, *4 (N.D. Cal. June 27, 2005). Finally, j2 cites no authority supporting its contention that evidence should be excluded merely because Venali attended the deposition by telephone. Accordingly, j2's request for sanctions must be denied on the merits.

j2's reliance on *Frazier* is misplaced. In *Frazier*, the plaintiff filed a lawsuit for alleged infringement of a patent that the Court found to be clearly invalid. 486 F. Supp. 2d at 831. *Frazier* involved myriad allegations of misconduct, which resulted in the district court striking the plaintiff's expert testimony on the issue of patent validity and imposing discovery sanctions on the plaintiff. *Id.* at 839-44. With respect to noticed deposition in *Frazier*, the defendants argued that the plaintiff failed to serve a valid subpoena on the witness and knew in advance that the deposition would not go forward, but failed to inform the defendants. *See* O'Keefe Decl., Exhibit A. The plaintiff failed to procure the witness and the defendants' counsel needless flew to California for the deposition

SULLIVAN & CROMWELL LLP

JOINT STIPULATION CONCERNING J2'S MOTION FOR ATTORNEYS' FEES AND COSTS

that did not take place. *Id.* The deposition was then held at a later date. The defendants in *Frazier* were thus clearly harmed. *Id.*

In this case, it is Catch Curve and j2 – not Venali – that have brought this frivolous and improper litigation. And, Mr. O'Keefe is not responsible for any failure to appear by the witness. In fact, Mr. England represented the witness. Moreover, Venali served a valid subpoena on Mr. Ragland and agreed to reschedule his deposition for a time that was convenient to Mr. Ragland and his counsel. Additionally, unlike *Frazier*, Mr. England flew to Connecticut not only for the deposition, but also to prepare Mr. Ragland for the deposition. Most importantly, unlike *Frazier*, the deposition went forward and there is no allegation that any party failed – intentionally or otherwise – to procure the attendance of the witness. Also, no time was wasted in attending two depositions, one of which did not go forward. *Id.* at 843. Thus, *Frazier* is clearly distinguishable.

Finally, the Court should consider j2's motivation in bringing this request for fees and sanctions. The Court has ruled that none of the plaintiff's claim construction arguments are meritorious. Moreover, after causing Venali to incur months of attorneys' fees preparing for summary judgment on all of the infringement claims, Catch Curve recently abandoned all of its infringement allegations except for certain claims of the '021 patent. *See* O'Keefe Decl., Ex. B. And, j2 is now painfully aware that Venali is committed to moving forward with its motion for summary judgment of non-infringement and its case against j2 and Catch Curve for bringing this frivolous action.

j2's motion is nothing more than a preemptive strike to muddy the waters in advance of Venali's inevitable motion for attorneys' fees under the exceptional case provision of 35 U.S.C. § 285. j2 would also like to confuse the jury in this sham litigation case with allegations that Venali was also sanctioned in this case. The Court should not entertain j2's argument. And, j2's motion is brought for an improper purpose. Accordingly, j2's request for sanctions should

-11-

1  be denied. *See Logan,* 981 F. Supp. at 1308 ("A federal court has the power to
2  discipline attorneys who appear before it; however, this power 'ought to be
3  exercised with great caution.'").

6  Dated: December 12, 2007

*Rbt A. Sacks /EEJ*
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Of Counsel:
Jeffrey S. Gerchick
KENYON & KENYON LLP
1500 K Street, N.W.
Suite 700
Washington, D.C. 20005-1257
(202) 220-4200
(202) 220-4201 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
333 West San Carlos Street, Suite 600
San Jose, California 95110
(408) 975-7500
(408) 975-7501 facsimile

Attorneys for Third Party Defendant
j2 GLOBAL COMMUNICATIONS, INC.

Dated: December 13, 2007

John C. Carey (admitted *pro hac vice*)
Douglas O'Keefe (admitted *pro hac vice*)
CAREY, RODRIGUEZ,
GREENBERG & PAUL LLP
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 372-7474
(305) 372-7475 facsimile

Attorneys for Defendant, Counterclaimant
and Third Party Plaintiff VENALI, INC.