UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CATCH CURVE, INC., | ) | Case No. CV 05-04820 DDP (AJWx) |
| Plaintiff, | )<br>) | **ORDER DENYING VENALI'S MOTION FOR** |
| | ) | **ATTORNEY FEES PURSUANT TO 35** |
| v. | ) | **U.S.C. § 285** |
| | ) | |
| VENALI, INC., | ) | [Motion filed on September 25, |
| | ) | 2008] |
| Defendant. | ) | |
| _____ | ) | |

This matter comes before the Court on patent infringement
defendant Venali, Inc.'s Motion for Attorney Fees Pursuant to 35
U.S.C. § 285. After reviewing the materials submitted by the
parties, hearing oral argument, and considering the parties'
contentions, the Court denies the Motion for Attorney Fees.

**I.   BACKGROUND**

On July 1, 2005, Plaintiff Catch Curve, Inc. ("Catch Curve")
brought this suit against Defendant Venali, Inc. ("Venali")
alleging patent infringement.  Catch Curve is the owner by
assignment of the following patents:  U.S. Patent No. 4,994,926,
U.S. Patent No. 5,291,302,  U.S. Patent No. 5,459,584, U.S. Patent
No. 6,643,034, and U.S. Patent No. 6,785,021.  These patents are

1  all entitled "Facsimile Telecommunications System and Method."

2      The patents disclose a fax communications system which was

3  designed to improve security and save redial efforts by

4  transmitting facsimile machines when the intended destination fax

5  machine is busy or otherwise unavailable. The technology

6  accomplishes this by providing a "store and forward facility,"

7  which receives faxes transmitted by an originating fax machine,

8  stores them, and forwards or retransmits these messages to their

9  intended destinations at a time when the receiving machine is

10 available. Venali provides a fax-to-email service that Catch Curve

11 argued infringed its patents.

12     Prior to this lawsuit, Catch Curve had licensed the patents-

13 in-suit to a number of fax-to-email companies. Although Catch Curve

14 obtained some of its licenses without litigation, others

15 represented settlements as a result of patent infringement

16 lawsuits. No previous lawsuits on the patents-in-suit had reached

17 claim construction.

18     Venali asserted, inter alia, defenses of noninfringement and

19 invalidity. Venali also asserted counterclaims against Catch Curve

20 and a third party complaint against j2 Global Communications, Catch

21 Curve's parent company. On April 30, 2007, this Court issued an

22 Order Granting in Part and Denying in Part Catch Curve's Motion to

23 Dismiss Counts Two through Six and Eight of Venali's counterclaim

24 and third party complaint.[1]  In its Order, the Court determined

25 that Venali's Sherman Act and sham litigation claims should stand

26

27      [1]On November 30, 2007, this Court issued an Order dismissing
   Count Eight of Venali's amended counterclaim and third party
28 complaint.

1    pending the claim construction hearing.  The Court dismissed

2    Venali's tying and § 17200 counterclaims with leave to amend.

3         On May 11, 2007, the Court issued its Claim Construction Order

4    for the patents-in-suit. See Docket Entry ("D.E.") 81. The Claim

5    Construction Order primarily adopted Venali's proposed construction

6    of the patents-in-suit. Most notably, the Claim Construction Order

7    found that the patents were limited to traditional fax-to-fax

8    services and did not cover fax-to-email services.

9         After the Court issued the Claim Construction Order, Catch

10   Curve served supplemental responses to interrogatories, increasing

11   the number of claims asserted and asserting infringement under the

12   doctrine of equivalents. In further supplemental responses,

13   however, Catch Curve abandoned most of those claims and narrowed

14   its allegations of infringement to a claim of literal infringement

15   of five claims of a single patent, the '021 Patent. Reserving its

16   right to appeal the Claim Construction Order, Catch Curve conceded

17   that Venali did not infringe the other four patents-in-suit in

18   light of the Claim Construction Order.

19        Venali moved for summary judgment of noninfringement on the

20   five claims of the '021 Patent. The Court granted summary judgment

21   of noninfringement in favor of Venali on August 12, 2008.

22        By stipulation, Venali then filed its Second Amended

23   Counterclaim and Third Party Complaint ("SACC").  Because of the

24   Court's August 12, 2008 Summary Judgment Order, the only remaining

25   claims in this action were Counts Two and Three of Venali's Second

26   Amended Counterclaim and Third Party Complaint. Those Counts

27   asserted monopolization and attempted monopolization in violation

28   of § 2 of the Sherman Act. SACC ¶¶ 61-72. Venali alleges that Catch

3

Curve's infringement suits against its competitors, and against
Venali in particular, constitute sham litigation brought as a
scheme of willful acquisition or maintenance of monopoly power.
SACC ¶¶ 62-64, 68-71. Venali's antitrust claims are based solely on
what it claims is Catch Curve's anticompetitive ("sham")
litigation. Id. Arguing that it is protected by Noerr-Pennington
immunity from antitrust liability, Catch Curve filed a motion for
summary judgment on those antitrust claims, which the Court
addresses in a separate Order.

On September 25, 2008, Venali filed this motion for attorney
fees pursuant to 35 U.S.C. § 285. Venali argues that this is an
exceptional case warranting attorney fees in its favor because, in
light of the intrinsic evidence and j2's prior conduct, Catch Curve
knew the suit against Venali was baseless, and because Catch Curve
prolonged the allegedly baseless litigation after the Claim
Construction Order.

**II.   LEGAL STANDARD ON A 35 U.S.C. § 285 MOTION**

Federal Circuit precedent governs a motion for attorney fees
pursuant to § 285. Pharmacia & Upjohn Co. v. Mylan Pharm., Inc.,
182 F.3d 1356, 1359 (Fed. Cir. 1999). Section 285 fees are
available only to a prevailing party. 35 U.S.C. § 285. The
determination whether to award attorney fees pursuant to 35 U.S.C.
§ 285 involves two steps. "First, a district court must determine
whether the prevailing party has proved by clear and convincing
evidence ... that the case is 'exceptional.'" Forest Labs., Inc. v.
Abbott Labs., 339 F.3d 1324, 1327 (Fed. Cir. 2003). If the district
court finds the case to be exceptional, its second step is to
"determine whether an award of attorney fees is appropriate." Id.

4

1  at 1328. Whether a case is exceptional is a factual finding by the
2  district court. Whether attorney fees are warranted in an
3  exceptional case is within the Court's discretion. <u>Id.</u> Attorney
4  fees under § 285 are not intended to be an "ordinary thing in
5  patent suits." <u>Rohm & Haas Co. v. Crystal Chem. Co.</u>, 736 F.2d 688,
6  691 (Fed. Cir. 1984).

7  **III. DISCUSSION**

8       There is no dispute that Venali, in whose favor summary
9  judgment was granted, is the prevailing party here. Rather, the
10 parties argue over whether this is an exceptional case in which an
11 award of attorney fees is appropriate.

12      A.   <u>Exceptional Case</u>

13      Venali argues that this is an exceptional case because the
14 suit as filed was baseless and frivolous in light of the patent
15 claims, prosecution history, and prior Audiofax litigation, and
16 because Catch Curve continued to litigate issues of infringement
17 after the Court issued its Claim Construction Order.

18      A prevailing party can show that a case is exceptional by
19 providing clear and convincing evidence of inequitable conduct
20 before the PTO; litigation misconduct; vexatious, unjustified, and
21 otherwise bad faith litigation; a frivolous suit or willful
22 infringement. <u>Phonometrics, Inc. v. Westin Hotel Co.</u>, 350 F.3d
23 1242, 1246 (Fed. Cir. 2003); <u>see</u> <u>Q-Pharma, Inc. v. Andrew Jergens</u>
24 <u>Co.</u>, 360 F.3d 1295, 1304 (Fed. Cir. 2004). Although the successful
25 defense of a patent suit does not create an exceptional case, <u>see,</u>
26 <u>e.g.</u>, <u>Forest Labs.</u>, 339 F.3d at 1330-31, an accused but prevailing
27 infringer may recover attorney fees where the patentee's
28 allegations are particularly unfounded. When, for example, "the

patentee is manifestly unreasonable in assessing infringement,
while continuing to assert infringement in court, an inference is
proper of bad faith, whether grounded in or denominated wrongful
intent, recklessness, or gross negligence." Eltech Sys., Corp. v.
PPG Indus., 903 F.2d 805, 811 (Fed Cir. 1990). When determining
whether litigation is brought in bad faith, is vexatious, or is
unjustified for the purposes of being an "exceptional case"
pursuant to § 285, the Federal Circuit has looked to the standard
announced in Professional Real Estate Investors v. Columbia
Pictures Industries, 508 U.S. 49, 60-61 (1993). Brooks Furniture
Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir.
2005). That standard allows sanctions to be imposed against the
patentee "only if both (1) the litigation is brought in subjective
bad faith, and (2) the litigation is objectively baseless." See id.
(citing Prof'l Real Estate Investors).[2]

       1. *Baselessness of the Suit When Filed*

    Venali first argues that this lawsuit was baseless as filed.
To show that Catch Curve filed a frivolous lawsuit, and intended to
do so, Venali points to (1) the patent's intrinsic evidence, (2)
j2's position in the Audiofax litigation, and (3) the prior
lawsuits and licensing. This evidence does not clearly and
convincingly show that Catch Curve engaged in bad faith litigation.
    While, as the Claim Construction Order makes clear, the Court
agrees with Venali that the patents-in-suit cover only fax-to-fax

---

    [2]The Court considers the litigation in this case against the
Professional Real Estate Investors standard in its order on Catch
Curve's motion for summary judgment as to the antitrust claims.
Professional Real Estate Investors specifically concerns Noerr-
Pennington immunity.

1  technology, the Court does not consider Catch Curve's infringement

2  suit to be frivolous. Venali points to the claims and the

3  specification of the relevant patents and argues that they clearly

4  limit the patent to fax-to-fax, rather than fax-to-email,

5  technology. Venali also argues that the prosecution history shows

6  that the inventor disavowed a fax-to-email system during patent

7  prosecution. As the Court notes in its separate order granting

8  summary judgment as to Venali's antitrust claims, although the

9  Court found that Venali's proposed construction was the proper

10  reading of the patent, the Court does not consider Catch Curve's

11  claim construction to be objectively baseless or frivolous.[3] The

12  Court declines to draw an inference of bad faith. While Catch

13  Curve's construction lacked merit, it is not so clearly frivolous

14  as would support an inference that Catch Curve knew at the time it

15  alleged infringement that it could not lawfully prevail.

16      j2's position in the early disclosures of the AudioFax

17  litigation does not carry much weight in this context. In the late

18  1990s, AudioFax, from whom j2 purchased the patents-in-suit, sued

19  j2 for patent infringement. AudioFax alleged that j2's fax-to-email

20  systems infringed the patents-in-suit. In mandatory disclosures, j2

21  disclosed that the factual basis for its defense of noninfringement

22  was that the patents did not cover fax-to-email technology. Venali

23  argues that this disclosure provides a window into j2's (and, by

24  extension, Catch Curve's) "true thoughts," Mot. at 10, and that

25

26      [3]Venali accuses Catch Curve of trying to reargue the claim

27  construction in its opposition to this motion. See Opp. at 1:5-7.
   The Court views Catch Curve's arguments as aimed at explaining why

28  its positions during claim construction and on summary judgment
   were not frivolous.

1   these disclosures show that j2 knew the patents did not cover fax-
2   to-email technology. Although this disclosure may appear to cut in
3   Venali's favor, the Court notes that j2 ended up purchasing a
4   license for a not insignificant sum, which limits the force of that
5   argument. Taking the license fee and pleadings together, a
6   plausible inference is that j2 later believed that AudioFax had a
7   valid argument for infringement. The Court therefore finds this
8   evidence of limited weight in proving that this was an exceptional
9   case by clear and convincing evidence.

10      Additionally, the Court does not consider the licensing
11  history to be persuasive in suggesting that Catch Curve knew the
12  lawsuit was baseless or otherwise filed in it bad faith.   In
13  general, Venali argues that Catch Curve's practice of licensing its
14  patents for less than the cost of litigation supports a finding
15  that this is an exceptional case. Venali points to the amount of
16  the licenses, the fact that their average is less than when
17  AudioFax owned them, and that the cases never got to claim
18  construction. The Court is not convinced that Venali's proposed
19  inference from these actions is the proper one. It is not
20  inappropriate for a patent holder to seek to license its patents,
21  nor is it inappropriate for a patent holder to secure settlements
22  at an early stage in litigation.

23      Venali cites to Micromesh Tech. Corp. v. Am. Recreation
24  Prods., Inc., 2007 WL 2501783 (N.D. Cal. 2007), for the proposition
25  that demanding licensing fees in conjunction with a strategy of
26  filing "ill-advised and poorly researched actions" warranted a
27  finding of an exceptional case. The Court finds that case
28  distinguishable because that case concerned an inadequate

1    investigation, but Venali has not presented evidence of an

2    inadequate investigation by Catch Curve. Venali has presented

3    little more than assertions regarding the allegedly improper

4    tactics in securing licensing fees.

5        Accordingly, Venali has not shown that Catch Curve's case was

6    in bad faith (or otherwise exceptional) when filed.

7            2.   *Conduct after Claim Construction*

8        Venali's strongest argument in favor of finding this an

9    exceptional case is that, after the Court's Claim Construction

10   Order, Catch Curve unreasonably prolonged the litigation, and did

11   so in bad faith. In particular, Venali points to the fact that,

12   after the Claim Construction Order, Catch Curve multiplied the

13   number of claims it alleged that Venali asserted under a doctrine

14   of equivalents theory. Additionally, even after Catch Curve

15   abandoned its doctrine of equivalents theory, narrowed its asserted

16   claims, and conceded noninfringement on four of the five patents,

17   Venali argues that Catch Curve's opposition to summary judgment on

18   the '021 patent shows bad faith.

19       Although the Court agreed with Venali that Catch Curve could

20   not prove infringement of the '021 patent in light of the Claim

21   Construction Order, see D.E. 132 at 15, the Court does not find

22   that Catch Curve's behavior after the Claim Construction Order

23   warrants a finding that this is an exceptional case. Notably, Catch

24   Curve abandoned its doctrine of equivalents arguments soon after

25   advancing them and did not make them before the Court.[4]

26

27   _____
         [4]The Court recognizes that Venali likely incurred attorney
     fees whether or not it actually propounded discovery, but finds
28   that Catch Curve's abandonment of these arguments mitigates a

                                               (continued...)

1  Additionally, Catch Curve did stipulate to noninfringement on four

2  of the five patents-in-suit. Moreover, Catch Curve's arguments on

3  summary judgment, although unsuccessful in light of the Claim

4  Construction Order, did not constitute a "flouting" of the Court's

5  prior order, and were not unreasonable in a way constituting

6  exceptional circumstances.

7          3.   *Totality of the Circumstances*

8      Taking the parties' arguments and evidence as a whole, Venali

9  has not shown by clear and convincing evidence that this case is an

10 exceptional one. Without question, Venali was the prevailing party

11 in the patent infringement action. Venali's appeal to notions of

12 justice notwithstanding, the circumstances do not clearly and

13 convincingly show, however, that Catch Curve's litigation was taken

14 or prolonged in bad faith. Accordingly, the Court finds that this

15 was not an exceptional case.

16     B.   <u>Propriety of Attorney Fees</u>

17     Because the Court finds that this is not an exceptional case,

18 the Court does not reach the second step of the § 285 analysis.

19 **IV.   CONCLUSION**

20     For the foregoing reasons, the Court denies the Motion for

21 Attorney Fees.

22 IT IS SO ORDERED.

23

24 Dated: November 3, 2008

25                              DEAN D. PREGERSON
                                United States District Judge

26

27 _____

28     [4](...continued)
   finding of bad faith.

10