CV05-4820-DDPAJW

# United States Court of Appeals for the Federal Circuit

2009-1121

CATCH CURVE, INC.,

Plaintiff-Appellant,

v.

VENALI, INC.,

Defendant/Third Party Plaintiff-Appellee,

v.

J2 GLOBAL COMMUNICATIONS, INC.,

Third Party Defendant.

## Judgment

ON APPEAL from the    United States District Court for the Central District of California

in CASE NO.    05-CV-04820

This CAUSE having been heard and considered, it is

ORDERED and ADJUDGED:

### AFFIRMED

ENTERED BY ORDER OF THE COURT

DATED JAN 2 2 2010

Jan Horbaly, Clerk

ISSUED AS A MANDATE: MAR - 1 2010

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1121

CATCH CURVE, INC.,

               Plaintiff-Appellant,

v.

VENALI, INC.,

               Defendant/Third Party Plaintiff-Appellee,

v.

J2 GLOBAL COMMUNICATIONS, INC.,

               Third Party Defendant.

Robert A. Sacks, Sullivan & Cromwell LLP, of Los Angeles, California, argued for plaintiff-appellant. With him on the brief were Brian R. England, and Edward E. Johnson. Of counsel on the brief was Frank L. Bernstein, Kenyon & Kenyon LLP, of San Jose, California.

John C. Carey, Carey Rodriguez Greenberg & Paul, LLP, of Miami, Florida, argued for defendant/third party plaintiff-appellee. With him on the brief was Douglas L. O'Keefe.

Appealed from: United States District Court for the Central District of California

Judge Dean D. Pregerson

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1121

CATCH CURVE, INC.,

Plaintiff-Appellant,

v.

VENALI, INC.,

Defendant/Third Party Plaintiff-Appellee,

v.

J2 GLOBAL COMMUNICATIONS, INC.,

Third Party Defendant.

Appeal from the United States District Court for the Central District of California in case no. 05-CV-04820, Judge Dean D. Pregerson.

DECIDED: January 22, 2010

Before NEWMAN, BRYSON, and DYK, Circuit Judges.

BRYSON, Circuit Judge.

I

Catch Curve, Inc., owns a group of patents that are directed to the transmission and storage of facsimile ("fax") messages over switched telephone networks. Four of the patents share a common specification and are continuations-in-part of the fifth

patent, U.S. Patent No. 4,994,926 (the '926 patent), the application for which was filed in 1988.[1] The inventions described in the patents focus on the use of a computer-based device known as a "store and forward facility," or SAFF. The patents describe the inventive subject matter as entailing the transmission of a fax message from an originating traditional fax machine to an "originator SAFF," which either forwards the incoming fax message or stores it for later transmission. The originator SAFF may forward the fax message over a switched telephone network to a destination fax machine or to a second SAFF, after which the second SAFF forwards the message to the destination fax machine. By employing a SAFF or a pair of SAFFs, the patented method enables users to alter the timing or delivery location of their fax messages to achieve greater efficiency in the use of their fax machines and the available telephone lines.

A

In 2005, Catch Curve brought this patent infringement action against Venali, Inc., in the United States District Court for the Central District of California. In the complaint, Catch Curve asserted claims from all five patents. Following a claim construction proceeding, the district court construed the term "facsimile," as used in the patents, to mean "image data transmitted using facsimile protocol on the switched telephone network"; the term "facsimile message," as used in the patents, to mean "[a] message

---

[1] The four patents that share a common specification are U.S. Patent No. 5,291,302; U.S. Patent No. 5,459,584; U.S. Patent No. 6,643,034; and U.S. Patent No. 6,785,021 ("the '021 patent"). The common specification differs from the original specification of the '926 patent only insofar as it discloses two additional features of the invention, the ability to send a reply to a received fax message and the ability to provide a fax-to-voice message conversion service. Neither feature is pertinent to this appeal.

2009-1121                                    2

transmitted and received by facsimile protocol"; and the term "facsimile protocol," as used in the patents, to mean "the standardized procedure that governs the transmitting and receiving of facsimile messages over the switched telephone network." The court further explained that facsimile protocol excludes "other protocols whereby the substance of a facsimile message is converted into a different format and then retransmitted using some other protocol." The effect of the court's claim construction was to require that all of the claimed systems and methods use facsimile protocol as the basis for the claimed communications and that the transmissions all be routed over a switched telephone network.

Following the district court's construction of the critical claim terms, Catch Curve limited its case to assert only claims 33, 44, 64, 69, and 78 of the '021 patent. Those five claims, which Catch Curve refers to as the "storage" claims, recite methods for transmitting a fax message (or "facsimile information") over a switched telephone network from an originating fax machine to a SAFF, which then stores the message. The five asserted claims do not require the further transmission of the message from the SAFF to another SAFF or to a destination fax machine, but instead require only that the message be forwarded to a mailbox associated with a particular recipient (or, in the case of claim 69, either to a mailbox or to a fax-receiving device). For example, claim 69 provides:

> 69. A method of delivering a facsimile image, said method comprising the steps of:
> associating each telephone number of a first plurality of telephone numbers on a switched telephone network with an intended recipient of a first plurality of intended facsimile recipients;
> receiving at a first call handling facility a telephone call directed to one of the telephone numbers of the first plurality of telephone numbers

2009-1121                                   3

> and switched to the call handling facility by the switched telephone network as a result of the dialing of the one of the telephone numbers;
> answering at the call handling facility the received telephone call and interacting using facsimile protocol with an originating fax machine on the other end of the call;
> during the call, receiving at the call handling facility from the originating fax device a fax message, using facsimile protocol; and
> directing the fax message to one of the destinations selected from the group consisting of (i) a mailbox defined in a computer storage and associated prior to the receipt of the call with a particular recipient and with the particular one of the plurality of telephone numbers and (ii) a fax receiving device.

Although Catch Curve conceded that under the court's claim construction Venali's system does not infringe most of the asserted claims, it contended that even under the court's construction, Venali infringes the five "storage" claims in the '021 patent.

B

The manner in which Venali's accused system operates is not in dispute. In Venali's system, an originating fax machine sends a fax message to a point of presence ("POP") over ordinary telephone lines. When the message is received at the POP, it is converted into a different format, the Tagged Image File Format ("TIFF"), and it is stored in a general queue along with a separate file containing metadata about the message. The files are then encoded in Extensible Markup Language ("XML") and sent via Hypertext Transfer Protocol ("HTTP") over the Internet to Venali's data center. The data center then converts the message into a Portable Document Format ("PDF") file or into a different TIFF file and stores the file in a user-specific mailbox. The file is later sent by Simple Mail Transfer Protocol ("SMTP") email, HTTP, or HTTPS (secure HTTP) to the intended recipient.

Based on its construction of the claims, and in particular on its construction of the term "facsimile" to mean image data transmitted using fax protocol over a switched

telephone network, the district court concluded that Venali's accused system does not infringe the asserted claims. The court therefore entered summary judgment in Venali's favor on Catch Curve's infringement claims. With respect to Venali's cross-claims against third-party defendant j2 Global Communications, Inc., Catch Curve's parent corporation, the court granted summary judgment against Venali. Catch Curve appeals the grant of summary judgment against it. Venali has not taken a cross-appeal from the summary judgment as to the cross-claims against j2.

II

A

Catch Curve argues that the district court erred by limiting the claims to a specific protocol. It asserts that a "facsimile message" or "facsimile communication" should be construed to refer to the image data that is initially transmitted by a facsimile machine, and that the communication remains a "facsimile message" or "facsimile communication" regardless of any subsequent changes in the format used to convey that data after it is sent. Venali, on the other hand, contends that the district court properly limited the claims because the patents use the terms "fax message" and "fax communication" to mean messages that are communicated in fax protocol over a switched telephone network, and because those terms do not include messages that are converted into different formats for transmission over the Internet.

The district court correctly noted that "[f]or a machine to be a 'fax' machine that sends 'fax' messages, it must use a certain protocol . . . to communicate. Otherwise, nothing distinguishes these machines from any other machine used for communication." In the common specification of the five patents, the inventors made

2009-1121                                    5

clear that they used the term "facsimile communications" to refer to communications between conventional fax machines or their proxies over a switched telephone network. The specification describes the subject matter of the patents as "[t]he electronic transmission of documents by way of facsimile (fax) systems, employing public and private switched telephone networks," '021 patent, col. 1, ll. 29-31, and it describes the inventions generally as consisting of "a system and method for providing a comprehensive interactive facsimile message management system embedded in a switched telephone network," id., col. 21, ll. 27-29. The disclosed method, according to the specification, is designed "to achieve this in a way which is fundamentally compatible with existing fax terminal machines." Id., col. 3, ll. 2-3. The "basic approach," the specification adds, "is to provide special computer-based fax Store And Forward Facilities (SAFFs) as an integral part of a switched telephone network system." Id., col. 3, ll. 3-6. Because the specification was first filed in 1988, the reference to "existing fax terminal machines," like the references to other features of fax technology, pertains to the technology as it existed at that time.

    Nothing in the specification suggests that the fax messages of the invention are converted to a different format and transmitted to the recipient over a medium other than a switched telephone network. If the destination fax machine is within the service region of the SAFF that first receives the fax message from the sending fax machine, the system temporarily stores the fax message and attempts to call the destination fax machine. If contact is established, the SAFF delivers the fax message immediately. '021 patent, col. 3, ll. 13-16. If the destination fax machine is within the service area of a different SAFF, "the system forwards the fax document data to that facility by long-

distance lines, in which case the second facility attempts to call the destination machine" so as to deliver the fax message. Id., col. 3, ll. 16-24. If the attempt to deliver the fax message to the destination machine fails on the first try, the message is stored at the second SAFF and subsequent attempts are made to deliver the message from that SAFF. Id., col. 3, ll. 25-56.

Although Catch Curve contends that the term "fax message" refers to any image data that replicates the original fax communication, regardless of what format is used to communicate or store that data and regardless of what medium is used to transmit the data, that is not the way the patents use the terms "fax messages" or "fax transmissions." Rather, the common specification makes clear that the fax messages that are the subject of the patent are sent and received by conventional fax machines or their proxies over a switched telephone network using fax protocol. When the specification refers to devices other than traditional fax machines that can be adapted to receive fax communications, such as computers or ordinary television sets, it explains that those devices can be made to function as "paperless fax terminals." In describing the computer that can serve as a "paperless fax terminal" to receive fax messages from the SAFF mailbox, the specification makes clear that the computer uses a computer communications code to initiate telephonic contact with the Mail Box Service Control and that the Mail Box Service Control switches the computer from computer terminal mode to fax terminal mode for delivery of the requested fax messages over a telephone network, after which the fax message is delivered just as it would be to a traditional fax machine. '021 patent, col. 15, ll. 57-65. There is nothing in the specification to suggest that the fax message is converted to a different protocol for

purposes of transmission, nor is there anything to suggest that the fax message is transmitted to its destination over a system quite different from a switched telephone network, such as the Internet.

Catch Curve argues that fax protocol must be used for the communication of image data between a fax machine and a SAFF, but need not be used for the communication of image data between two SAFFs. Because the SAFFs are computers, not fax machines, Catch Curve contends that the communication between the two SAFFs must be in a digital language. While that may be, the common specification makes it clear that the SAFFs are required to communicate with one another over a switched telephone network. For example, the patent teaches that the two SAFF machines communicate "through a long-distance interface over long-distance circuits." '021 patent, col. 8, ll. 24-25; see also id., col. 12, ll. 33-36 (noting that the invention "can significantly enhance the efficiency of the . . . long-distance and local telephone circuits"). Therefore, even if the district court's claim construction was unduly restrictive with respect to the use of fax protocol in every phase of the communication process, it was not in error with respect to the requirements that the communications take place over a switched telephone network and that the fax messages be delivered to a traditional fax machine or a proxy for such a machine by fax protocol over a switched telephone network.

Venali's accused system operates in a fundamentally different manner. Venali's system converts messages into formats other than fax protocol before storing or forwarding the messages and then transmits the messages to their intended destinations via SMTP, HTTP, or HTTPS protocol over the Internet. The messages are

2009-1121 8

not sent to, and are not retrievable by, a conventional fax machine or a "paperless fax terminal" operating in fax protocol. Thus, all the data storage and transfer functions in Venali's system, after the initial receipt and conversion of the fax message, are inconsistent with fax protocol. In particular, Venali's Internet transmissions are quite different from the claimed transmissions of fax message signals over a switched telephone network. The district court therefore correctly concluded that Venali does not practice the methods or systems that are disclosed in the asserted patents and claimed in the numerous claims originally asserted by Catch Curve.

B

Catch Curve argues that even if Venali's system does not infringe the other asserted claims, it at least infringes the five so-called "storage" claims of the '021 patent. Those claims relate only to the transmission of fax messages from the originating fax machine to the SAFF and do not require the further step of transmitting the messages to another SAFF or to the ultimate recipients.

The five "storage" claims, like the other asserted claims, focus on the functions of the SAFF described in the specification. Claims 33, 44, and 64 require "at least one store and forward facility," thus explicitly requiring the use of a SAFF. Claim 69 and its dependent claim 78 require the step of receiving a fax message "at a first call handling facility." Claim 69 expressly requires that facility to have the capacity to store or forward fax messages, thus making it clear that the recited "call handling facility" is a "store and forward facility" as described in the specification. As noted above, the specification states that the SAFF contemplated by the invention is "an integral part of a switched telephone network system," '021 patent, col. 3, ll. 5-6, and that the SAFF must be

2009-1121                                9

capable of receiving fax messages from, and sending fax messages to, conventional fax machines over a switched telephone network. By reciting the use of a SAFF, the storage claims, like the other asserted claims of the patents in suit, are necessarily limited to systems that are capable of sending fax messages through fax protocol over a switched telephone network. See Biogen, Inc. v. Berlex Labs., Inc., 318 F.3d 1132, 1139-40 (Fed. Cir. 2003) (limiting both method and apparatus claims "to conform with the basis on which the invention was presented in the specification").

In addition, the five "storage" claims each require the step of storing incoming fax messages in user-specific mailboxes for later retrieval or alternatively (in the case of claim 69) sending the messages directly to a fax-receiving device. The mailbox referred to in those claims is described throughout the patent as a component of the SAFF, not simply as a generic storage device. E.g., '021 patent, col. 13, ll. 59-62 (describing the mailbox as an "auxiliary storage file in the Answer Function of the destination SAFF"). The specification explains that the contents of the SAFF's user-specific mailbox are associated with the telephone number of a particular user's destination fax machine. The messages received in each of the mailboxes are retained in a mailbox-specific queue for future retrieval by the intended recipients, who can "at their convenience, dial into the system and pick up any waiting documents." '021 patent, col. 4, ll. 1-26. The specification further states that addressees may have the messages either sent to the designated fax machine or "redirected" to a different fax machine, so that messages sent to a fax mailbox "can be accessed . . . from any telephone with a fax machine." Id., col. 14, line 66, through col. 15, line 25. The specification thus makes it clear that the SAFF is designed to deliver messages from

the mailbox in fax protocol and over a switched telephone network, regardless of whether the SAFF delivers the messages to a designated destination fax machine or to a different fax machine as directed. E.g., id. at col. 15, ll. 30-33. By claiming the step of forwarding a fax message to a "mailbox," the storage claims are therefore necessarily limited to systems that are configured to forward a fax message from storage in fax protocol over a switched telephone network.

Catch Curve responds by arguing that inventors are allowed to claim less than their full invention, and that the storage claims should not be construed to require a system capable of delivery of fax messages over the switched telephone network because the storage claims do not include the delivery step. However, merely omitting a step in a described process does not perforce expand the scope of the claim to encompass the use of devices that are nothing like those described in the specification as integral to the invention. See Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009) ("[C]laims cannot enlarge what is patented beyond what the inventor has described as the invention."), quoting Networld, LLC v. Centraal Corp., 242 F.3d 1347, 1352 (Fed. Cir. 2001); see also Wang Labs., Inc. v. Am. Online, Inc., 197 F.3d 1377, 1382 (Fed. Cir. 1999) (limiting the claim term "frame" to character-based protocol, even though "frame," used generally, could also refer to bit-mapped displays, because the specification described and enabled only systems using character-based protocol). As noted above, the specification describes the invention as operating in a single medium, and it contains no suggestion that the "SAFF" or the "mailbox" referred to in the storage claims could encompass any type of storage system with any type of downstream transmission capacity. Instead, based on the detailed description of the

SAFFs and the mailboxes in the specification, the storage claims must be understood to be limited to an apparatus that contains a storage medium and has the capacity to receive and transmit fax messages in fax protocol over a switched telephone network.

In Venali's system, an incoming fax message is converted into TIFF format and stored in a general queue, rather than in a user-specific mailbox. The message is then transmitted over the Internet, using a non-facsimile format, to Venali's data center where it is stored either in a general queue or in a user-specific mailbox, for further transmission to the user over the Internet. The undisputed facts show that the Venali system does not transmit, or have the capacity to transmit, a fax message over a switched telephone network to a fax-receiving device. Instead, after the Venali system receives a fax message from a conventional fax machine, it converts the message into a different format and transmits it over the Internet either to a designated user-specific mailbox or directly to the intended recipient. Venali's system thus is not designed to forward messages, or to store messages for forwarding, to a fax-receiving device over a switched telephone network. For that reason, Venali's system cannot be said to contain a "SAFF" or "mailboxes," as those terms are used in the storage claims of the '021 patent. Venali's system therefore does not infringe the five storage claims.

We _affirm_ the district court's order granting summary judgment of non-infringement.

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT
IS A TRUE AND CORRECT COPY
OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
By: [signature]   Date: 3/1/10